## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ADRIAN PEREZ,

       Plaintiff,

vs.                                          No. CIV 24-1294 JB/GJF

CITY OF ANTHONY, NEW MEXICO,

       Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Opposed Motion to Remand Action to State Court, filed January 6, 2025 (Doc. 10)("Motion to Remand"); (ii) the Defendant's Motion to Dismiss Plaintiff's Original Complaint for Alleged Deprivation of Civil Rights or, in the Alternative, Motion for More Definite Statement, file December 30, 2024 (Doc. 5)("Motion to Dismiss"); and (iii) the Plaintiff's Opposed Motion for Extension of Time to Respond to Defendant's Motion to Dismiss, filed January 6, 2025 (Doc. 11)("Motion for Extension").  The Court held a hearing on February 25, 2025.  <u>See</u> Clerk's Minutes at 1, filed February 25, 2025 (Doc. 22)("February, 25, 2025, Hearing Minutes").  The primary issues are: (i) whether the Court has federal-question jurisdiction over this State-law case pursuant to 28 U.S.C. § 1331(a), where Plaintiff Adrian Perez raises only State-law claims but alleges that Defendant City of Anthony, New Mexico, retaliates against him by filing a formal complaint against him with his federal employer, the United States Department of Homeland Security; (ii) whether the Court should grant the Motion to Dismiss after remanding this case to State court for lack of federal-question jurisdiction; and (iii) whether the Court should grant the Motion for Extension after remanding this case to State court for lack of federal-question jurisdiction.  The Court concludes that: (i) the Court does not have federal-question jurisdiction over this State law case, because Perez' right to

relief does not depend on resolution of a substantial federal-law question; (ii) the Motion to Dismiss is moot, because the Court remands the case to State court; and (iii) the Motion for Extension is moot, because the Court remands the case to State court. Accordingly, the Court grants the Motion to Remand and remands the case to the County of Doña Ana, Third Judicial District Court, State of New Mexico.

## FACTUAL BACKGROUND

Before discussing this case's procedural history, the Court provides a brief factual background. The Court takes its facts largely from the Plaintiff's Original Complaint for Deprivation of Civil Rights, filed November 20, 2024, County of Doña Ana, Third Judicial District, State of New Mexico, removed December 23, 2024, to federal court (Doc. 1-1)("Complaint"). Accordingly, the facts primarily reflect Perez' version of the case.

Perez is a lifetime resident of the City of Anthony, and he has served as a Customs and Border Patrol ("Border Patrol") agent for over twenty-one years. See Complaint ¶ 6, at 3. Beginning in 2021, Perez gets involved in local advocacy efforts regarding the City of Anthony's "response to trash and code enforcement." Complaint ¶ 7, at 3. During this period, the City of Anthony paints over graffiti as a part of his advocacy efforts. See Complaint ¶ 7, at 3.

Throughout 2022 and 2023, Perez attends Board of Trustees meetings and "speak[s] on public matters." Complaint ¶ 8, at 4. The City of Anthony's advocacy efforts "focus on concerns he and others in the community had about the BOT and Mayor Diana Murillo's failure to transparently account for budgetary decisions." Complaint ¶ 9, at 4. Perez accuses the Board of Trustees of "using executive session inappropriately to discuss concerns about misuse of public funds" rather than discussing those concerns in "open session." Complaint ¶ 9, at 4. Concerned about a perceived conflict of interest, Perez objects to the City of Anthony's hiring Mario Juarez-Infante as a city manager. See Complaint ¶ 10, at 4. Perez and several other plaintiffs sue the City

of Anthony to stop it from hiring Juarez-Infante.  See Complaint ¶ 10 at 4.

On March 15, 2023, Perez participates in a "peaceful demonstration" objecting to the Board of Trustees' removal of public comment.  Complaint ¶ 11, at 4.  Perez begins "regularly communicating public safety concerns to City officials."  Complaint ¶ 12, at 4.  For example, Perez tells City of Anthony officials about "an officer being at a party while on duty."  Complaint ¶ 12, at 4.

Around this time, the City of Anthony begins "stonewalling" the requests that Perez makes through New Mexico's Inspection of Public Records Act, N.M.S.A. § 14-2-1 to 12 ("IPRA"), and Perez sues the City of Anthony "to receive responses to discrete requests for documents related to his advocacy."  Complaint ¶ 13, at 4.  In a public filing in an unrelated case, the City Manager says that Perez, "'a federal employee, is clearly violating the federal CBP employee handbook and should be reprimanded.'"  Complaint ¶ 15, at 5 (internal quotations have no citation).  On April 19, 2023, Juarez-Infante files a formal complaint with the United States Department of Homeland Security Office of Inspector General -- hereinafter, the "Inspector General Complaint" -- about Perez.  See Complaint ¶ 16, at 5.  In the Inspector General Complaint, Juarez-Infante asks the Homeland Security Department to censure, investigate, and discipline Perez, because "'he does not exhibit ethical conduct.'"  Complaint ¶¶ 17-18, at 5-6 (quoting Inspector General Complaint). In the Inspector General Complaint, Juarez-Infante describes Perez' advocacy efforts, including: (i) Perez bringing video recording equipment to Board of Trustees meetings; (ii) Perez bringing "'a small group of Anthony residents that continuously criticizes'" the Board of Trustees; (iii) Perez passing out face masks and signs at an April 5, 2023, Board of Trustees meeting; and (iv) Perez sharing inaccurate information about the Board of Trustees on social media and YouTube.  Complaint ¶ 17, at 5-6 (quoting Inspector General Complaint).  In the Inspector General Complaint, Juarez-Infante says that Perez' actions are "'infamous, dishonest, and notoriously

disgraceful.'"  Complaint ¶ 17, at 6 (quoting Inspector General Complaint).  Perez alleges that the

City of Anthony files the Inspector General Complaint for three reasons: (i) "to coerce Perez's

employer to take against him solely because he was attending, monitoring, and peacefully

objecting to the City's actions"; and (ii) "to chill his exercise of his rights under the New Mexico

Constitution."  Complaint ¶¶ 19-20, at 6.  In sum, Perez alleges that "the City and its agents have

taken concerted actions against him in his personal life, restrained him from participating in the

City's public meetings, and interfered with his employment."  Complaint ¶ 21, at 6.

## PROCEDURAL BACKGROUND

In the Procedural Background section, the Court first describes the Complaint and the

Notice of Removal.  Then, it summarizes the Motion to Remand and the associated briefs.  Next,

the Court summarizes the Motion to Dismiss and the Motion for Extension.  Finally, the Court

summarizes the February 25, 2025, motion hearing.

### 1.    The Complaint.

The Plaintiffs file their Complaint in the County of Doña Ana, Third Judicial District, State

of New Mexico, on November 20, 2024.  See Complaint at 1.  The Complaint describes Perez'

advocacy and the City of Anthony's alleged retaliation.  See Complaint ¶¶ 6-21, at 3-6.  Perez

brings one cause of action under the New Mexico Civil Rights Act, N.M.S.A. § 41-4a ("NM Civil

Rights Act"), which alleges that the City of Anthony violates the Constitution of the State of New

Mexico's provision that "'[e]very person may freely speak, write and publish his sentiments on all

subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or

abridge the liberty of speech or of the press.'"  Complaint ¶¶ 22-25, at 7 (quoting N.M. Const. Art.

II § 17).  Perez outlines two liability theories.  See Complaint ¶¶ 26-31, at 7-8.  First, Perez asserts

that the City of Anthony censors his "right to speak freely regarding matters of public concern"

and his "right to petition his municipal government."  Complaint ¶¶ 26-28, at 7-8.  Second, Perez

asserts that "[m]embers of the City of Anthony have also acted in retaliation against Perez for exercising his right to speak freely and to petition the government" by "interfering with his employment relationship, releasing his public information, targeting him in public comments, and excluding him from public forums." Complaint ¶¶ 29-31, at 8. Perez alleges that these "actions would chill a person of reasonable firmness from further participation in free speech or the petition of government." Complaint ¶ 31, at 8.

Although Perez cites to a federal standard for retaliation claims arising under the First Amendment of the United States Constitution, Perez maintains that he "brings exclusively state-law claims," which "arise exclusively from the New Mexico Bill of Rights." Complaint ¶ 30, at 8. Regarding damages, Perez says that he suffers "emotional pain and suffering, loss of privacy, presumed or dignitary damages, loss of reputation, and risk of further harm." Complaint ¶ 32, at 9. Perez requests: (i) compensatory damages; (ii) pre-judgment and post-judgment interest; (iii) injunctive relief requiring the City of Anthony to "ensure access to all City meetings equally," prohibiting the City of Anthony and its agents from "communicating with Plaintiff's employers or any potential employers regarding Plaintiff's employment," and prohibiting the City of Anthony and its agents from "making derogatory comments in their official capacity against Plaintiff"; (iv) reasonable attorneys' fees and costs of suit; and (v) "such other and further relief as the Court deems just and proper." Complaint, Prayer for Relief ¶¶ 1-5, at 9.

     **2.**     **The Notice of Removal.**

On December 23, 2024, the City of Anthony files the Notice of Removal, which asserts that the Court has the power to hear the case under the federal-question statute, 28 U.S.C. § 1331. See Notice of Removal at 1. The City of Anthony argues that federal-question jurisdiction is proper, because Perez' State law claims "involve a federal issue that is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting

the federal-state balance approved by Congress.'"  Notice of Removal ¶ 16, at 4 (quoting <u>Gunn v. Minton</u>, 568 U.S. 251, 258 (2013)).  The City of Anthony insists that the "gravamen" of Perez' Complaint is that Anthony interferes with Perez' federal employment.  Notice of Removal ¶ 17, at 5.  The City of Anthony maintains that the interference claim "cannot be resolved without necessarily implicating federal law," because the Court must determine whether Perez' federal employer -- the Border Patrol -- took any adverse action against Perez based on his speech and whether that action is a reasonable speech restriction under the United States Constitution.  Notice of Removal ¶¶ 18-28, at 5-6.

  **3.**   **<u>The Motion to Remand</u>.**

  On January 6, 2025, Perez requests that the Court remand the case to State court.  <u>See</u> Motion to Remand at 1.  Perez also asks for attorney's fees and costs in bringing the Motion to Remand.  <u>See</u> Motion to Remand at 1.  Perez argues that the City of Anthony does not establish the four required elements of the "<u>Grable</u> test," which requires the City of Anthony to establish that "Perez' Complaint alleged a state law claim that (1) 'necessarily raise[d] a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities.'"  Motion to Remand at 4 (quoting <u>Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.</u>, 693 F.3d 1195, 1203-04 (10th Cir. 2012)("<u>Devon Energy</u>"), and citing <u>Grable & Sons v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 312 (2005)("<u>Grable</u>")).

  First, Perez maintains that the Complaint does not raise a disputed, substantial federal claim, because Perez "does not allege that his federal employer took any action against him."  Motion to Remand at 6.  Perez argues, accordingly, that the Court does not have to interpret, under federal law, whether the Border Patrol has a right to restrict his speech or whether those restrictions are reasonable, because Perez challenges the City of Anthony's statements to the public and his

employer rather than the Border Patrol's employment actions or speech restrictions. See Motion to Remand at 7-8. Perez insists that "[t]he issue in this case is whether a New Mexico public body made retaliatory public statements about a private citizen in violation of the private citizen's rights under the New Mexico constitution," which does not implicate federal law. Motion to Remand at 7 (quoting Notice of Removal ¶ 25, at 6). Perez argues further that his damages request does not implicate a federal issue, because he "does not claim that he was fired or demoted as a result of the City's actions." Motion to Remand at 8. Perez concludes, thus, that his compensatory damages requests do not require "any assessment of his rights as a federal employee to First Amendment protections in his workplace." Motion to Remand at 8.

Second, Perez insists that his claims cannot be "resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." Motion to Remand at 10. On this point, Perez argues that removal requires the Court "to interpret the New Mexico Constitution in this federal court based on a cause of action (the NMCRA) that was passed in New Mexico only four years prior." Motion to Remand at 10. Perez suggests that, because "New Mexico's interest in interpreting both the NMCRA and the N.M. Constitution are great," resolving this case in a federal forum disturbs that balance of federal and State judicial responsibilities. Motion to Remand at 10 (emphasis in original).

Regarding fees, Perez "requests that the Court award attorney's fees and costs, because the City did not have an objectively reasonable basis for removing this case." Motion to Remand at 11. Citing 28 U.S.C. § 1447(c), Perez asserts that, "[w]hile an award of fees is within the discretion of the Court, '[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" Motion to Remand at 10-11 (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005)). Perez insists that there is no objective basis for removal, because: (i) the Notice of Removal is

"defective on its face" and is "based on a non-existent reading of the law"; and (ii) the City of Anthony does not "cite to applicable law that would support removal to this Court." Motion to Remand at 12.

    **4.**    <u>**The Motion to Remand Response.**</u>

    On January 21, 2025, the City of Anthony responds to the Motion to Remand. <u>See</u> Response to Plaintiff's Opposed Motion to Remand Action to State Court, filed January 21, 2025 (Doc. 12)("Motion to Remand Response"). The City of Anthony argues that the Complaint satisfies the <u>Grable</u> test:

> On its face, the Complaint suggests that the formal complaint made by the City of Anthony caused actionable harm to Plaintiff. For this to be true, Plaintiff's employer, the United States Customs and Border Protection agency ("CBP"), had to impose (or at the very least threaten) discipline against him as a result of the formal complaint made by the City of Anthony. Accordingly, the Complaint necessarily raises questions as to whether: (1) CBP took action (or threatened action) against Plaintiff; (2) whether the action taken was a nontrivial or non minimus injury that objectively chilled Plaintiff's speech; and, if so, (3) whether CBP had independent probable cause to take action (or even threaten action) against Plaintiff under federal policies, guidelines, and standards of conduct that apply to federal employees.

Motion to Remand Response at 2. The City of Anthony maintains that there is federal-question jurisdiction, even though that Perez asserts that his employer did not take any action against him. <u>See</u> Motion to Remand Response at 2. On this issue, the City of Anthony argues that Perez can only sustain his retaliation claim against the City of Anthony if Perez shows that Anthony's actions cause Perez' employer to take adverse, nontrivial, unjustified employment actions against Perez. <u>See</u> Motion to Remand Response at 3. The City of Anthony thus argues that "whether Plaintiff has alleged sufficient facts to state a claim for retaliation necessarily turns on the question of whether the City of Anthony's complaints caused Plaintiff a nontrivial or non de minimis injury." Motion to Remand at 8. The City of Anthony also asserts that: (i) federal case law is persuasive authority for resolving free-speech claims under the New Mexico Constitution; and (ii) the First

Amendment's free speech protections are coextensive with New Mexico's free speech protections. See Motion to Remand Response at 5-10. Mapping these arguments onto the Grable test, the City of Anthony asserts that: (i) the Complaint necessarily raises "whether Anthony's alleged complaint to CBP resulted in an actionable injury, e.g., adverse employment action (or even threatened adverse employment action) taken by CBP without probable cause under its federal policies and ethical standards the agency requires of its employees"; (ii) the parties actually dispute "whether Plaintiff has met his burden to allege he suffered an actionable injury that resulted from actual discipline (or threatened discipline) by CBP and without probable cause"; and (iii) this disputed issue "presents a substantial question unique to federal agency law -- namely interpretation of the limitations a federal employer can impose on its employees' First Amendment rights, the reasonableness of those limitations, and, most essentially, the constitutionality of those limitations." Motion to Remand Response at 10. Regarding the last Grable element -- whether resolving the federal issue disturbs the balance of federal and State judicial responsibilities -- the City of Anthony argues that Perez' "alleged status as a CBP border patrol agent and CBP's ability to impose discipline and enforce its standards of conduct present issues unique to this case," and "it is difficult to envision the floodgates opening as to other cases under these circumstances." Motion to Remand Response at 11.

### 5.    **The Motion to Remand Reply**.

On February 4, 2025, Perez replies to the Motion to Remand Response. See Plaintiff's Reply to Defendant's Response to Plaintiff's Opposed Motion to Remand Action to State Court at 1, filed February 4, 2025 (Doc. 15)("Motion to Remand Reply"). First, Perez argues that "there is no support for the proposition that just because federal jurisprudence may be used persuasively in the interpretation of a purely state claim and state constitutional principles, the claim 'necessarily' raises a 'substantial' federal issue." Motion to Remand Reply at 3 (quoting Devon Energy, 693

F.3d at 1207).  Second, Perez argues that New Mexico courts do not rely "solely on First Amendment jurisprudence to interpret" New Mexico's free speech protections, nor have they decided how to evaluate retaliation claims under the New Mexico Constitution.  Motion to Remand Reply at 6.  On this issue, Perez argues that New Mexico courts' continued reliance on State law to resolve free-speech claims under the New Mexico Constitution demonstrates that his claim "involves substantial state law issues" rather than substantial federal-law issues.  Motion to Remand Reply at 6.  Perez thus argues that the City of Anthony does not establish the first three Grable elements, because Perez' Complaint does not raise a necessary, disputed, and substantial federal issue.  Motion to Remand Reply at 7.  Regarding the last Grable element, Perez maintains that removal "will disturb the balance of federal and state judicial responsibilities," because how to interpret the recently enacted NM Civil Rights Act is a job best left for New Mexico State courts. Motion to Remand Reply at 7-9.  Finally, Perez repeats his request for attorney's fees, because the City of Anthony "has not provided case law" demonstrating that removal under Grable is appropriate here.  Motion to Remand Reply at 10.

6.    **The Motion to Dismiss.**

On December 30, 2024, the City of Anthony asks the Court to dismiss Perez' Complaint for failure to state a claim under rule 12(b)(6), or, in the alternative, for the Court to issue an order requiring Perez to file a more definite statement under rule 12(e).  See Motion to Dismiss at 1.  On the rule 12(b)(6) issue, the City of Anthony first addresses Perez' retaliation claim.  See Motion to Dismiss at 7-11.  The City of Anthony argues that Perez' Complaint does not "meet the elements required for a retaliation claim," which, according to the City of Anthony, requires Perez to demonstrate that: (i) he is engaged in Constitutionally protected activity; (ii) the City of Anthony inflicts an injury "'that would chill a person of ordinary firmness from continuing to engage in that [protected] activity'"; and (iii) the City of Anthony's "'actions were substantially motivated as a

response'" to Perez' protected activity. Motion to Dismiss at 7 (quoting McBeth v. Himes, 598 F.3d 708, 717 (10th Cir. 2010)). Regarding the first retaliation element, the City of Anthony insists that neither the City of Anthony nor the Court "can assess whether the Plaintiff's speech at-issue amounts to constitutionally protected activity," because "the Plaintiff's speech is not alleged with any degree of particularity or precision." Motion to Dismiss at 7. Regarding the second retaliation element, the City of Anthony argues that Perez "has not alleged a cognizable injury," because, although, according to the City of Anthony, "the thrust of the Plaintiff's claim appears to be that Defendant possessed retaliatory animus against him that caused adverse employment action," Perez' Complaint "utterly fails to allege what action was taken or threatened by Plaintiff's employer." Motion to Dismiss at 7. Regarding the third element, the City of Anthony argues that, even if Perez "has sufficiently pled allegations to show Defendant possessed retaliatory animus against him for his supposed civic engagement or advocacy," Perez' Complaint "has not alleged an absence of probable cause for any adverse action taken by his employer (or even threatened by his employer) that caused any supposed injury to the Plaintiff." Motion to Dismiss at 8.

Next, the City of Anthony turns to Perez' censorship claim. See Motion to Dismiss at 11-12. The City of Anthony asserts that Perez "fails to articulate how his allegation of censorship is a legal theory distinct from his claim for retaliation." Motion to Dismiss at 11. The City of Anthony insists that Perez alleges only that the City of Anthony "took action against Plaintiff as a result of his advocacy" without alleging that those actions censored his speech. Motion to Dismiss at 12. The City of Anthony argues, accordingly, that the Court should dismiss Perez' censorship claim, because Perez does not "allege a distinct and legal supported basis" for that claim. Motion to Dismiss at 12.

On the rule 12(e) issue, the City of Anthony urges the Court to order Perez to "provide a more definite statement of his claims because, without clarification, it is impossible for the City to

frame an adequate answer and impossible for this Court to determine the adequacy of the allegations of the complaint."  Motion to Dismiss at 12.  The City of Anthony insists that Perez' Complaint does not answer key questions, including: (i) how Perez' employers harms him; (i) whether the adverse actions of Perez' employer are reasonable; and (iii) how the City of Anthony censors Perez.  See Motion to Dismiss at 12.  The City of Anthony argues that, because these questions "should have been answered by well-pled factual allegations required to withstand a motion to dismiss," the Court should require Perez to file a more definite statement of his claims. Motion to Dismiss at 12-13.

### 7.    The Motion for Extension.

Instead of responding to the City of Anthony's Motion to Dismiss, Perez asks the Court to give him more to time to respond under rule 6, which gives district courts "discretion to extend the time to respond to a pleading 'for good cause.'" Motion for Extension at 2 (quoting Fed. R. Civ. P. 6(b)(1)(A)).  Perez argues that his Motion to Remand poses "a threshold issue for the Court that must be decided before Defendant's Motion to Dismiss is considered."  Motion for Extension at 2.  Perez insists that federal courts must consider motions to remand before considering motions to dismiss, because a court cannot rule on substantive motions until it has determined that it has subject-matter jurisdiction.  See Motion for Extension at 2 (citing Provencio v. Ford Motor Co., No. CIV. 05-623 JB/ACT, 2005 WL 3662957, at *4 (D.N.M. Sept. 29, 2005)(Browning, J.)(addressing a motion to remand before addressing a motion for leave to amend the complaint, concluding that the motion to remand "is the more immediate request, because it concerns the Court's power to proceed in this matter at all," and holding that, "[i]f the Court lacks subject-matter jurisdiction at this point, before leave to amend has been granted, then the Court is 'powerless to continue' to the request for leave to amend")(quoting Cunningham v. BHP Petroleum Great Britain PLC, 414 F.3d 1169, 1175 (10th Cir. 2005)).  Perez thus requests that the

Court "suspend further briefing on Defendant's Motion to Dismiss until after the Motion for Remand is decided."  Motion for Extension at 4.

       **8.**       **<u>The Motion for Extension Response</u>.**

       On January 21, 2025, the City of Anthony responds to the Motion for Extension.  <u>See</u> Response to Plaintiff's Opposed Motion for Extension of Time to Respond to Defendant's Motion to Dismiss at 1, filed January 21, 2025 (Doc. 13)("Motion for Extension Response").  The City of Anthony argues that granting an "indefinite stay" of Motion to Dismiss briefing is not consistent with rule 1, "which requires the Federal Rules of Civil Procedure to be 'construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'"  Motion for Extension Response at 2 (quoting Fed. R. Civ. P. 1).  The City of Anthony asserts that, in the United States Court of Appeals for the Tenth Circuit, district courts consider four factors before staying proceedings: (i) whether the movants are likely to prevail in the related proceedings; (ii) whether, absent a stay, the movants will suffer irreparable harm; (iii) whether the stay will cause substantial harm to the other parties; and (iv) the public interests at stake.  <u>See</u> Motion for Extension Response at 2 (citing <u>United Steelworkers of Am. v. Oregon Steel Mills, Inc.</u>, 322 F.3d 1222, 1227 (10th Cir. 2003)).  The City of Anthony argues that all four factors weigh in favor of denying Perez' request to stay the proceedings: (i) Perez is not likely to prevail on his Motion to Remand, because Perez' Complaint implicates a substantial federal question; (ii) Perez does not establish irreparable harm; (iii) the City of Anthony will suffer substantial harm if briefing on its Motion Dismiss is stayed indefinitely; and (iv) there is a public interest in ensuring speedy determination of this action.  <u>See</u> Motion for Extension at 3.  Although the City of Anthony does not dispute Perez' assertion that federal district courts must consider motions to remand before considering motions to dismiss, the City of Anthony maintains that none of Perez' cited cases on this point "actually involve the grant of a stay of proceedings or briefing

on a motion to dismiss while a motion to remand remains pending before a district court." Motion for Extension at 3-4.

9.    **The Motion for Extension Reply**.

On February 4, 2025, Perez replies to the Motion for Extension Response. See Plaintiff's Reply to Defendant's Response to Plaintiff's Opposed Motion for Extension of Time to Respond to Defendant's Motion to Dismiss at 1, filed February 4, 2025 (Doc. 17)("Motion for Extension Reply"). Although Perez agrees that "none of the cases cited in his Motion involved an extension," Perez maintains that there is good cause to delay briefing on the Motion to Dismiss, because the "parties should not have to fully brief resolution of state constitutional issues under a federal motion to dismiss standard while a motion to remand is pending -- particularly where remand may be appropriate on the basis that federal resolution of the state law claims cannot occur 'without disturbing federal-state judicial interests.'" Motion for Extension Reply at 3 (quoting Motion to Remand at 11). Perez also disputes the City of Anthony's characterization of his Motion for Extension as a request for an indefinite stay; Perez insists that he asks only for a delay until the Court resolves the Motion to Remand. See Motion for Extension Reply at 3. Perez maintains that he does not argue that "motion briefing should always be delayed pending a Motion to Remand." Motion for Extension Reply at 4. Instead, Perez argues that "the circumstances here make it particularly appropriate," given that, in Perez' view, his claims do not warrant removal, and forcing the parties to engage in "substantial, novel, and disputed state law questions in this federal forum under a federal standard when the Court may find that such a decision is better suited for state court is confusing and inefficient for both this Court, the state court, and the parties themselves." Motion for Extension Reply at 3-4.

10.    **The February, 25, 2025, Hearing**.

The Court holds a motion hearing on February 25, 2025, regarding the Motion to Remand,

the Motion to Dismiss, and the Motion for Extension.  <u>See</u> February, 25, 2025, Hearing Minutes at 1.  The parties address the Motion to Remand first.  <u>See</u> February, 25, 2025, Hearing Minutes at 1.  After the parties repeat the arguments in their briefs, the Court asks the City of Anthony what the federal question is.  <u>See</u> Draft Transcript of February 25, 2025, Hearing at 4:11-13 (taken February 25, 2025)(Court)("February 25, 2025, Tr.").[1]  The City of Anthony responds: "The question would be whether or not the federal agency took adverse employment action that injured the plaintiff and whether or not it had probable cause to do so."  February 25, 2025, Tr. at 16:9-12 (Wilkey).  Perez confirms that, although Homeland Security Department initiates an investigation into Perez after the City of Anthony files the Inspector General Complaint, the Border Patrol does not take any adverse employment action against Perez, and Perez does not intend to "get into [] how the Border Patrol made that decision, how much evidence they had," in prosecuting his claims against the City of Anthony.  February 25, 2025, Tr. at 21:2-23:1 (Benoit, Court).  When the Court asks the City of Anthony for a case holding that, "just because the federal and State law is coextensive[,] that turns the State law claim into a federal claim," the City of Anthony does not identify a case or endorse that position.  February 25, 2025, Tr. at 31:9-33:19 (Court, Wilkey).  Instead, the City of Anthony argues that the coextensiveness of federal and State free speech jurisprudence weighs the fourth <u>Grable</u> factor in favor of removal, because a federal court using federal law to interpret New Mexico's free speech protections does not disrupt the federal-State judicial balance.  <u>See</u> February 25, 2025, Tr. at 32:9-33:19 (Wilkey).  The Court grants the Motion to Remand, reasoning that the Border Patrol's employment decisions are factual issues, and that the coextensive free-speech jurisprudence across federal and State courts is not a substantial federal issue, and certainly not one that disturbs the federal-State judicial balance under <u>Grable</u>.

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited versions.  Any final transcript may contain slightly different page and/or line numbers.

See February 25, 2025 Tr. at 34:24-35:22 (Court).  Turning to the Motion to Dismiss and the Motion for Extension, the parties agree that both motions are moot after the Court's remand ruling.  See February 25, 2025, Tr. at 35:23-36:3 (Wilkey, Court, Benoit).  Accordingly, the Court denies the Motion to Dismiss and the Motion for Extension as moot.  See February 25, 2025, Tr. at 36:4-5 (Court).

## LAW REGARDING FEDERAL-QUESTION JURISDICTION

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Federal-question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).  As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law."  Caterpillar, Inc. v. Williams, 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  Caterpillar, Inc. v. Williams, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 12 (1983)).  See Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'" (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986))).  While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the

claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399. Even the plaintiff can go only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists. Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

In addition to the requirement that the federal question appear on the complaint's face, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)(quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808). As for the second method, beyond the requirement of a "substantial" federal-law question at the case's heart, the federal question also must be "actually disputed," and its resolution must be necessary to the case's resolution. Grable, 545 U.S. 308, 314 (2005). Finally, the exercise of federal question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable, 545 U.S. at 313. In particular, the court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" State law claim that will overwhelm the judiciary with cases traditionally heard in State courts. Grable, 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" State law claims). See David L. Hanselman, Supreme Court Federal Removal Jurisdiction, For the Defense at 25, 65, 129 S.Ct. 365 (September 2005). The Supreme Court of the United States has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 813. Indeed, the Supreme Court has "forcefully reiterated" that district

- 17 -

courts must exercise "prudence and restraint" when determining whether a State cause of action presents a federal question, because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 810. See Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in State court satisfies the requirements for original federal jurisdiction -- most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court.'")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). In a case with multiple defendants, there must be unanimous consent to removal; a single defendant may spoil removal and keep the case in State court. See 28 U.S.C. § 1446(b)(2)(A). Only defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action, and their consent is not required for removal if all the defendants consent. See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643-44 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068, 1078-79 (D.N.M. 2007)(Browning, J.). "A plaintiff objecting to the removal may file a motion asking the district court to remand the case to state court." Huffman v. Saul Holdings LP, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied. Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse

in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a);

Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the

parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W.

Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the original jurisdiction

requirements, 28 U.S.C. § 1441(b)(2) lays out the "forum-defendant rule," which provides that a

case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the

state in which the State-court action was brought.  See § 1441(b)(2).  The Tenth Circuit notes:

> that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate
> requirement that "[a] civil action otherwise removable solely on the basis of
> [diversity] jurisdiction . . . may not be removed if any of the parties in interest
> properly joined and served as defendants is a citizen of the State in which such
> action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)(quoting 28 U.S.C.

§ 1441(b)(2))(alterations in Brazell v. Waite, but not 28 U.S.C. § 1441(b)(2)).[2]  The forum-

defendant rule applies to only cases removed under diversity jurisdiction; a defendant may remove

a case brought against it in its home State on the basis of federal-question jurisdiction.  See

---

[2]Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013). is an unpublished opinion, but
the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in
the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may
be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we
> have generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Brazell
v. Waite, Oklahoma Farm Bureau Mutual Insurance Co. v. JSSJ Corp., 149 F. App'x 775, 778
(10th Cir. 2005), Browning v. American Family Mutual Insurance Co., 396 F. App'x 496, 505-06
(10th Cir. 2010), Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007), and
Watkins v. Terminix International Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam),
have persuasive value with respect to a material issue, and will assist the Court in its disposition
of this Memorandum Opinion and Order.

28 U.S.C. § 1441(b).  Last, a case cannot be removed if it began with a nondiverse party or a forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979);[3] Flores-Duenas v. Briones, 2013 U.S. Dist. LEXIS 173620, at *12 n.6, *26 (D.N.M. 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule); or (ii) the removal-spoiling party is joined fraudulently or misjoined procedurally.

### 1.    The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08–0812 JB/ACT, 2009 U.S. Dist. LEXIS 45672, at *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail v. Deere & Co., 529 F.3d at 953.  See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  See also McPhail v. Deere & Co., 529 F.3d at 955 ("It would have been more precise to say that the defendant must

---

[3]In DeBry v. Transamerica Corp., the Tenth Circuit explains:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

601 F.2d at 488 (citing Self v. General Motors Corp., 588 F.2d 655 (9th Cir. 1978)).

affirmatively establish jurisdiction by proving jurisdictional facts . . . .").  Because federal courts are courts of limited jurisdiction, "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014).  This strict construction and presumption against removal should not, however, be interpreted as hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *2 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")(citing Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *12).

### 2.    Removal's Procedural Requirements.

Section 1446 of Title 28 of the United States Code governs the procedure for removal.  "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *5.  A removal that does not comply with the express statutory requirements is defective and must be remanded to State court.  See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United State Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-

69; 28 U.S.C. § 1446(b).  The Tenth Circuit elaborates that, for the thirty-day period to begin to

run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal

jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The

Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to

investigate and determine removability where the initial pleading indicates that the right to remove

may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[4]

---

[4]In 2011, Congress clarifies removal jurisdiction and procedures in the Federal Courts
Jurisdiction and Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011).  See
Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5.

        On December 7, 2011, President Obama signed into law the Federal Courts
        Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the
        operation of federal jurisdictional statutes and facilitate the identification of the
        appropriate state or federal courts in which actions should be brought [see Pub. L.
        No. 112-63, 125 Stat. 758 (2011)].

        . . . .

        Section 103 of the Act makes several changes to removal and remand
        procedures.  28 U.S.C. § 1446 is amended to cover removal procedures for civil
        cases only; provisions governing removal of criminal prosecutions have been
        moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758
        (2011)].

        Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on
        the removal of any civil action with both removable claims and nonremovable
        claims (i.e., those outside of the original or supplemental jurisdiction of the district
        court), the district court must sever all nonremovable claims and remand them to
        the state court from which the action was removed. The amendment also provides
        that only defendants against whom a removable claim has been asserted need to
        join in or consent to removal of the action.  [Pub. L. No. 112-63, § 103(a), 125 Stat.
        758 (2011)].

        Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-
        defendant case, each defendant will have 30 days from his or her own date of
        service (or receipt of initial pleading) to seek removal.  Earlier-served defendants
        may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63,
        § 103(a), 125 Stat. 758 (2011)].  These provisions are intended to resolve a circuit
        split over when the 30-day removal period begins to run in cases in which not all
        defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011);
        see, e.g., Bailey v. Janssen Pharm., Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day

"When a civil action is removed solely under section 1441(a), [the standard removal statute, which excludes multiparty, multiforum jurisdiction,] all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. See Bonadeo v. Lujan, 2009 WL 1324119, at *5-6; McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *4 (D.N.M. Feb. 9, 2010)(Browning, J.)("A notice of removal fails if this procedural requirement is not met."). The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20. See Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998)(stating that the general removal rule "require[s] all defendants to join in the removal petition"); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant, Interstate Book Company, did not join in the petition for

---

period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants have sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

    Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal. These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recovery of damages in excess of the amount demanded. Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5 (quoting 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107SA-1 to 107SA-2 (3d ed. 2013)).

removal and the petition was thus procedurally defective."); Bonadeo v. Lujan, 2009 WL 1324119, at *5 ("Although the procedure for a notice of removal set out in 28 U.S.C. § 1446(b) is couched in terms of a single defendant, courts have held that all defendants must join a removal petition or removal will be defective.")(citing Cornwall v. Robinson, 654 F.2d at 686). The defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

   3.    **Amending the Notice of Removal.**

   In Caterpillar, Inc. v. Lewis, the Supreme Court holds that a defect in subject-matter jurisdiction cured before entry of judgment does not warrant reversal or remand to State court. See 519 U.S. at 70-78. Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit holds that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit notices, on appeal, defects in the notice of removal, including that the notice of removal fails to allege properly diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless permits the defective notice of removal to be amended on appeal to establish properly subject-matter jurisdiction. See 150 F.3d at 653-54.

   The Tenth Circuit allows defendants to remedy defects in their petition or notice of removal. See Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."); Jenkins v. MTGLQ Investors,

218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to allege properly jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts). The Tenth Circuit also reasons that disallowing amendments to the notice of removal, even after the thirty-day removal window has expired, when the defendant makes simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  The Tenth Circuit notes that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court grants the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02).  Further, in Thompson v. Intel Corp., the Court permits the defendant, Intel Corp., to amend its notice of removal to add missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of State, so that the diversity requirements are met.  See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives. It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon

14 Wright & Miller's <u>Federal Practice and Procedure</u> § 3733 (rev. 4th ed. 2020)(footnotes omitted). Professor Moore similarly recognizes: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, <u>Moore's Federal Practice</u> § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013). Thus, where the defendant asserts diversity jurisdiction as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to allege fully facts that satisfy, requirements by a preponderance of the evidence, diversity jurisdiction's requirements. <u>See</u> <u>Carrillo v. MCS Indus., Inc.</u>, No. CIV 12–0573 JB/WPL, 2012 WL 5378300, at *14 (D.N.M. 2012)(Browning, J.)(permitting a party to amend its notice of removal when the removing party does "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provides greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). <u>Cf.</u> <u>New Mexico ex rel. Balderas v. Valley Meat Co.</u>, No. CIV 14-1100 JB/KBM, 2015 WL 3544288, at *25 (D.N.M. 2015)(Browning, J.)(denying amendment when it seeks to assert a new jurisdictional basis that the notice of removal does not raise).

## <u>LAW REGARDING RULE 12(B)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.).  The sufficiency of a complaint is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004)).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570; <u>Mink v. Knox</u>, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis in original). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 550 U.S.] at [570]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although defendants generally must plead affirmative defenses in their answers, and not argue them on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss. See Robbins v. Oklahoma, 519 F.3d at 1247; Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)). Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the complaint's face. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1277, at 643 (3d ed. 2004). If a complaint

sets forth dates that appear to fall outside of the statutory limitations period, then a defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

A plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute.  The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in a complaint or may be merely argued in response to the motion.[5]  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in a complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  It appears that, from case law in several Courts of Appeals, a plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See, e.g., Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.); Hollander v. Brown, 457 F.3d 688, 691

---

[5]The Tenth Circuit views a claim based on a statute of limitations as an "affirmative defense," which "[a] plaintiff need not anticipate in the complaint" as "it is the defendant's burden to plead an affirmative defense."  Fernandez v. Clean House, LLC, 883 F.3d 1296, 1298-99 (10th Cir. 2018)(citing Gomex v. Toledo, 446 U.S. 635, 640 (1980)).  See United States v. Titterington, 374 F.3d 453, 456 (6th Cir. 2004)(citing United States v. Cook, 84 U.S. 168 (1872))("[T]he Supreme Court has held that a statute-of-limitations claim falls on the affirmative-defense side of the line.").  The Plaintiffs are not required to "plead against affirmative defenses" and, accordingly, a motion to dismiss cannot be sustained on factors of an affirmative defense the plaintiff was not required to anticipate.  Asebedo v. Kan. State Univ., 559 F. App'x. 668, 671-72 (10th Cir. 2014)(holding that a dismissal based on a plaintiff omitting a claim of reasonableness in his or her complaint is invalid when reasonableness is an element of an affirmative defense and thus not required in the complaint).  Accordingly, "[t]he statute of limitations . . . is not at issue until it is raised," and "[o]nly then does it become incumbent upon the plaintiff to meet the allegations or face dismissal of [their] complaint."  Cutsinger v. Cullinan, 72 Ill. App. 3d 527, 531-32 (Ill. App. 1979).  The Court thus concludes that a plaintiff is not required to include facts to support an assertion that a different statute of limitations or an equitable tolling doctrine applies in their initial complaint as this would effectively be requiring the plaintiff to plead against an affirmative defense.

n.1 (7th Cir. 2006)(Ripple, J.).  Although the Tenth Circuit has not addressed this practice squarely, the Court has permitted this practice.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1207 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING THE FIRST AMENDMENT

The First Amendment states: "Congress shall make no law . . . abridging the freedom of speech, or of the press."  U.S. Const. amend. I.  The First Amendment secures the "freedom of expression upon public questions."  New York Times Co. v. Sullivan, 376 U.S. 254, 269 (1964).  According to Justice Louis Brandeis, Associate Justice of the Supreme Court, "[t]hose who won our independence believed that the final end of the state was to make men free to develop their faculties, and that in its government the deliberate forces should prevail over the arbitrary."  Whitney v. California, 274 U.S. 357, 375 (1927).  The Constitution's Framers "valued liberty both as an end and as a means," and "believed liberty to be the secret of happiness and courage to be the secret of liberty."  Whitney v. California, 274 U.S. at 375.  The Framers firmly believed that the "freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth," because, without them, "discussion would be futile."  Whitney v. California, 274 U.S. at 375.  Justice Brandeis noted that the values that the First Amendment protects are essential to the operation of the democracy that the Constitution creates.  See Whitney v. California, 274 U.S. at 375.  Robust public discussion is a "political duty" and is a "fundamental principle of the American government."  Whitney v. California, 274 U.S. at 375.  Constitutional protections of freedom of expression and of the press, therefore, are "fashioned to assure unfettered interchange of ideas for the bringing out of political and social changes desired by the people."  Roth v. United States, 354 U.S. 476, 484 (1957).

The First Amendment, however, is not an absolute bar on government intervention.  "No law," does not actually mean "no law."  U.S. Const. amend. I.  See Dennis v. United States, 314

U.S. 494, 503 (1951)(noting that the First Amendment does not protect an "unlimited, unqualified right," because the "societal value of speech must, on occasion, be subordinated to other values and considerations"); Ashcroft v. ACLU, 535 U.S. 564, 573 (2002)(stating that, "'as a general matter, the First Amendment means that government has no power to restrict expression because of its messages, its ideas, its subject matter, or its content," but "this principle, like other First Amendment principles, is not absolute")(quoting Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 65 (1983)). Although the First Amendment speaks in absolutist terms, courts have long recognized that governments Constitutionally can restrict speech and the press under certain conditions. See Holder v. Humanitarian L. Project, 561 U.S. 1, 26-29 (2010). Justice Oliver Wendell Holmes, Associate Justice of the Supreme Court, notes in his famous example: "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." Schenck v. United States, 249 U.S. 47, 52 (1919). Not all speech is protected speech. See Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942)("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."); Miller v. California, 413 U.S. 15, 23 (1973)("This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment."). "[N]ot all speech is of equal First Amendment importance." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 758 (1985). The extent to which the government may limit access to information or restrict speech "depends on the nature of the forum." Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 797 (1985). See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)(concluding that certain content-neutral time, place, and manner restrictions are Constitutional). Moreover, the First Amendment's speech and press protections limit both State and federal government action. See Gitlow v. New York, 268 U.S. 652, 666 (1925); Near v. Minnesota, 283 U.S. 697, 628 (1931).

The First Amendment regulates "government regulation of private speech" and not government speech or purely private speech regulations. Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009). The First Amendment does not compel either the government or private persons to supply information. See Shero v. City of Grove, 510 F.3d 1196 (10th Cir. 2007). See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig., 288 F. Supp. 3d 1087, 1168-73 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING FIRST AMENDMENT RETALIATION

The Tenth Circuit has noted that, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." Lackey v. Cnty. of Bernalillo, 166 F.3d 1221, at *3 (10th Cir. 1999)(unpublished)(citing Smart v. Bd. of Trustees of Univ. of Illinois, 34 F.3d 432, 434 (7th Cir. 1994) and Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co., 593 F.2d 1030, 1064 (D.C. Cir. 1978)). In Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), the Tenth Circuit draws on case law from the United States Court of Appeals for the Eighth Circuit to announce the elements for a First Amendment retaliation claim against a defendant who is not the plaintiff's employer:[6]

---

[6]In cases involving allegations of First Amendment retaliation when the plaintiff is a public employee, courts undertake balancing pursuant to Pickering v. Board of Education of Township High School District 205, 391 U.S. 563, 568 (1968), which is the test that ensures that, for public employees, "[e]mployee speech is protected only if the employee's interest in free expression outweighs the employer's interest in restricting the speech." Worrell v. Henry, 219 F.3d 1197, 1206 (10th Cir. 2000)(citing Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir. 1998)). As Van Deelen v. Johnson, 497 F.3d 1151, 1156 (10th Cir. 2007), notes:

> Because of the government's need to maintain an efficient workplace in aid of the public's business, the Supreme Court has long recognized that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."

497 F.3d at 1156 (quoting Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, 391 U.S. at 568).

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)(quoting Lackey v. Cnty. of Bernalillo, 166 F.3d 1221, at *3). See Worrell v. Henry, 219 F.3d at 1212 (discussing approvingly Helvey v. City of Maplewood, 154 F.3d 841, 844 (8th Cir. 1998)).

## ANALYSIS

The Court grants the Remand Motion and concludes that there is no federal-question jurisdiction in this case. First, the Court concludes that there is no federal-question jurisdiction under Grable, because Perez' Complaint does not "necessarily raise" a substantial, actually disputed federal issue that the Court may resolve without disturbing the federal-State judicial balance. Grable, 545 U.S. at 314. Second, the Court dismisses the Motion to Dismiss and the Motion for Extension as moot, because the Court does not have subject-matter jurisdiction over this case.

## I.    THE COURT DOES NOT HAVE FEDERAL-QUESTION JURISDICTION UNDER GRABLE, BECAUSE PEREZ' STATE-LAW CLAIMS DO NOT "NECESSARILY RAISE" A FEDERAL CLAIM.

The Court does not have federal-question jurisdiction under Grable, because Perez' Complaint does not necessarily raise a federal claim. Without raising any federal claim, Perez' State law claims do not establish federal-question jurisdiction under Grable. Grable jurisdiction is "exceedingly narrow -- a 'special and small category' of cases." Gilmore v. Weatherford, 694 F.3d 1160, 1171 (10th Cir. 2012)(quoting Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006)). "The 'mere need to apply federal law in a state-law claim' will not 'suffice to open the "arising under" door.'" Gilmore v. Weatherford, 694 F.3d at 1171 (quoting Grable, 545 U.S. at 313)(internal quotations have no citation). "To establish federal-question jurisdiction under

the Grable & Sons test, a state-law claim (1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities." Devon Energy, 693 F.3d at 1208.

The City of Anthony argues that Perez "necessarily raises" a federal employment-law claim. Motion to Remand Response at 10. In the City of Anthony's view, the thrust of Perez' retaliation claim is that the Border Patrol punished Perez unfairly after the City of Anthony filed a formal complaint with the Homeland Security Department's Inspector General about Perez' bristly advocacy. See Motion to Remand Response at 10. According to the City of Anthony, this retaliation claim raises a substantial federal issue, because the adjudicator must determine whether the Border Patrol's adverse employment action against Perez is justified, and, to make that determination, the adjudicator must turn to federal law governing how federal employers may lawfully limit their employees' speech.[7] See Motion to Remand Response at 10.

The City of Anthony misses the mark, however, because Perez does not allege that the Border Patrol took any adverse action against him. See Motion to Remand at 6 (asserting that

_____

[7]A First Amendment retaliation claim under federal law requires: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)(quoting Mendocino Env't Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300-01 (9th Cir. 1999)). In a case like Perez', where the party taking the adverse action -- in this case, the Border Patrol -- is not the party retaliating against the plaintiff's free-speech exercise -- in this case, the City of Anthony -- the plaintiff must prove that the party taking the adverse action does not have probable cause to take the adverse action. See McBeth v. Himes, 598 F.3d 708, 720 (10th Cir. 2010). Thus, to sustain a retaliation claim based on the Border Patrol's hypothetical adverse action, Perez needs to show that the Border Patrol does not have probable cause for that hypothetical adverse action. Whether the Border Patrol has probable cause to take the hypothetical adverse employment action is a federal issue, because it requires the adjudicator to evaluate whether the adverse employment action aligns with the Border Patrol's relevant guidelines and policies. See McBeth v. Himes, 598 F.3d at 720.

Perez "does not allege that his federal employer took any action against him"); Complaint ¶¶ 29-31, at 8. Instead, Perez alleges that the City of Anthony "retaliated against Perez for his protected activity by interfering with his employment relationship, releasing his public information, targeting him in public comments, and excluding him from public forums." Complaint ¶ 31, at 8. The closest this statement gets to alleging an adverse employment action is Perez' assertion that the City of Anthony "interfer[es] with his employment relationship." Complaint ¶ 31, at 8. Even that statement, however, is not what the City of Anthony wants it to be. An allegation that the City of Anthony's Inspector General Complaint "interfer[es] with his employment relationship" is not an allegation that the Border Patrol takes adverse employment action against Perez. Complaint ¶ 31, at 8. Perez does not say that the Border Patrol fires him, disciplines him, cuts his pay, or withholds employment opportunities from him. See Complaint ¶¶ 29-31, at 8. Perez' retaliation claim against the City of Anthony is about how the City of Anthony allegedly chills his speech; the retaliation claim is not about how the Border Patrol took adverse action against him. See Complaint ¶¶ 29-31, at 8. According to Perez, the Inspector General Complaint is one of the ways that the City of Anthony chills his speech, even though the Inspector General Complaint does not trigger adverse employment action, because the Inspector General Complaint "interfer[ed] with his employment relationship." Complaint ¶ 31, at 8. Moreover, Perez alleges that the City of Anthony's retaliation chills his speech in ways that have nothing to do with his federal employer, i.e., by "releasing his public information, targeting him in public comments, and excluding him from public forums." Complaint ¶ 31, at 8.

Perez' liability theory does not "necessarily raise" the federal issue that the City of Anthony identifies, because Perez' retaliation claim does not require an adjudicator to evaluate the reasonableness of a federal employer's adverse action. Grable, 545 U.S. at 313. Without an adverse employment allegation, there is no federal claim in this case. The Tenth Circuit confronts

a similar issue in <u>Devon Energy</u> and arrives at the same conclusion.  In <u>Devon Energy</u>, the Tenth Circuit evaluates whether <u>Grable</u> jurisdiction lies over a state tort claim -- a mining company alleging that an oil company's new well interferes with its mining operations -- where the removing party -- the oil company -- argues that, in order to resolve the underlying claim, the adjudicator must evaluate whether the Bureau of Land Management follows its own regulations when the agency gives the oil company a permit for the disputed well.  <u>See Devon Energy</u>, 693 F.3d at 1208-11.  The Tenth Circuit concludes that the "contemplated state-law claims do not <u>necessarily</u> raise a disputed federal issue," because the mining company's claims "would focus on seeking redress" from the oil company, and the oil company "has failed to demonstrate that, in prosecuting those claims, Mosaic necessarily must challenge the BLM's exclusive authority to authorize well sites." <u>Devon Energy</u>, 693 F.3d at 1209-11 (emphasis in original).  ).  Similarly, here, Perez' claims "focus on seeking redress from" the City of Anthony "for alleged harm caused by" its retaliatory actions -- including, but not limited to, the Inspector General Complaint.  Moreover, the City of Anthony does not "demonstrate that, in prosecuting those claims," Perez "necessarily must challenge" the lawfulness of the Border Patrol's speech restrictions and resulting adverse employment action. <u>Devon Energy</u>, 693 F.3d at 1209.

The lawfulness of the Border Patrol's speech restrictions have nothing to do with this case, because Perez is suing the City of Anthony, and he is not suing the Border Patrol.  Perez does not allege that the Border Patrol takes any adverse action against him, and the City of Anthony does not identify any alleged adverse action.  <u>See</u> Complaint ¶¶ 29-31, at 8; Motion to Remand Response at 1-12.  Like in <u>Devon Energy</u>, this case's adjudicator does not need to evaluate the lawfulness of a federal agency's action to resolve Perez' State law claims.  <u>See Devon Energy</u>, 693 F.3d at 1209.  Instead, the adjudicator must determine whether the City of Anthony's actions -- including, but not limited to, the Inspector General Complaint -- chilled Perez' speech unlawfully,

given that the Border Patrol took no adverse action against him.  That inquiry does not require the adjudicator to evaluate anything that the Border Patrol did.  Thus, Perez' Complaint does not "necessarily raise" a federal issue.  Grable, 545 U.S. at 314.  Without a federal issue, the Court does not have federal-question jurisdiction under Grable.[8]  See Grable, 545 U.S. at 314.

Even if Perez alleges that the Inspector General Complaint triggers an adverse employment action, that hypothetical allegation does not "necessarily raise" a federal claim.  Grable, 545 U.S. at 314.  Perez alleges three other ways that the City of Anthony's retaliation chills his speech: releasing his public information, targeting him in public comments, and excluding him from public forums.  See Complaint ¶¶ 29-31, at 8.  In a hypothetical where Perez alleges an adverse employment action, the adjudicator evaluating Perez' retaliation claim may analyze a federal issue: whether the Border Patrol's hypothetical adverse employment action chills his speech.  The adjudicator does not have to evaluate, however, that federal issue, even if Perez' alleged an adverse employment action.  The adjudicator could also evaluate whether the City of Anthony's release of Perez' public information, targeted public comments, and exclusion from public fora chills his speech under New Mexico State law, which has nothing to do with the hypothetical Border Patrol-related federal issue.  Because the adjudicator could resolve the retaliation claim without evaluating the hypothetical adverse employment action's propriety under federal law, that hypothetical federal claim is not "necessarily raised."  Devon Energy, 693 F.3d at 1210 (holding that it "is not enough" that "a disputed federal issue could possibly be raised by Mosaic's claims," because the issue is not "necessarily raised")(emphasis in original).  Because Perez' State law claims do not "necessarily raise" a federal issue even if Perez alleges an adverse employment

---

[8]Resolution of the first Grable factor -- whether the State law claims "necessarily raise" a federal issue -- takes care of the remaining three factors.  Grable, 545 U.S. at 314.  A State law claim that does not "necessarily raise" a federal issue cannot raise, by definition, a federal issue that is substantial, actually disputed, or capable of resolution in federal court without disrupting the federal-State judicial balance.  Grable, 545 U.S. at 314.

action, the Court does not have federal-question jurisdiction.  Grable, 545 U.S. at 314.

The City of Anthony's other arguments also do not persuade the Court that Grable jurisdiction is warranted.  The City of Anthony argues that the Court has Grable jurisdiction, because: (i) federal case law is persuasive authority for resolving free-speech claims under the New Mexico Constitution; and (ii) the First Amendment's free speech protections are coextensive with New Mexico's free speech protections.  See Motion to Remand Response at 5-10.  None of the cases that the City of Anthony cites for these propositions is about Grable jurisdiction.  The City of Anthony does not identify a case saying that Grable jurisdiction lies when State courts sometimes use federal case law to resolve the State law claims at issue, or when the relevant federal and State law is coextensive.  See Motion to Remand Response at 5-10; February 25, 2025, Tr. at 31:9-33:19 (Court, Wilkey).  The Court also is not aware of any authority saying that Grable jurisdiction lies when State courts sometimes use federal case law to resolve the State law claims at issue, or when the relevant federal and State law is coextensive.

At best, the City of Anthony's arguments weigh Grable's fourth factor -- whether federal jurisdiction would disrupt the federal-State judicial balance -- towards removal.  State courts' practice of turning to federal law to interpret the relevant State law claim suggests that federal jurisdiction is less disruptive to the federal-State judicial balance, because the outcomes will more likely be consistent, regardless in which forum the parties litigate.  Also, when federal and State law is coextensive, a federal court exercising jurisdiction over State law claims is less disruptive for the same reason.  On the other hand, even when federal and State law share common legal principles, "State courts have authority to construe their own constitutional provisions however they wish."   Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law, at 16 (Oxford University Press 2018)("Sutton").  The Honorable Jeffrey S. Sutton, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, argues that "an

underappreciation of state constitutional law has hurt state <u>and</u> federal law and has undermined the appropriate balance between state <u>and</u> federal courts in protecting individual liberty."   <u>Sutton</u>, <u>supra</u>, at 6 (emphasis in original).   Judge Sutton's analysis undermines the City of Anthony's arguments about New Mexico courts using federal law to decide State Constitutional issues and weighs the fourth <u>Grable</u> factor against removal in this case.  Overall, the Court concludes that the fourth <u>Grable</u> factor weighs against removal.

These considerations regarding the fourth <u>Grable</u> factor do not change, moreover, the fact that State courts using federal law to interpret analogous State Constitutional provisions are applying State law and not federal law.  That federal law helps New Mexico courts interpret the New Mexico Constitution does not transform State law claims into federal claims.  <u>See</u> <u>Carpenter v. Wichita Falls Indep. Sch. Dist.</u>, 44 F.3d 362, 368 (5th Cir. 1995)(concluding that free-speech claims under the Texas Constitution do not present a federal question, noting that "Texas courts' possible reliance on the rules and reasoning of federal constitutional case law and scholarship in no way diminishes the independence of the state right," and holding that, "regardless of its formative reliance on federal law, the Texas constitutional right to free speech is not essentially federal, and to present a Texas constitutional claim is not necessarily to present a federal claim"); <u>Beavers v. City of Jackson</u>, 439 F. Supp. 3d 824, 829 (S.D. Miss. 2020)(Jordan, C.J.)(concluding that free-speech claims under the Mississippi Constitution do not give rise to <u>Grable</u> jurisdiction and holding that, although Mississippi Courts "often cite federal constitutional decisions when interpreting Mississippi's free-speech clause, this does not necessarily raise a federal issue"); <u>1488 Bayshore, LLC v. City of E. Palo Alto</u>, No. C09-2017 TEH, 2009 WL 1764573, at *2 (N.D. Cal. June 19, 2009)(Henderson, J.)(remanding State Constitutional claims and holding that "a state constitutional claim is not converted to a federal claim simply because a state court might be informed by federal law in interpreting the contours of the state constitution").  As relevant here,

New Mexico courts' use of federal law to interpret the New Mexico Constitution's free-speech provisions does not change the fact that Perez' State law claims do not "necessarily raise" a federal issue, and, thus, that the Court does not have federal-question jurisdiction over Perez' State law claims. Grable, 545 U.S. at 314.

## II.    THE COURT DENIES PEREZ' REQUEST FOR COSTS AND FEES, BECAUSE THE CITY OF ANTHONY HAS AN OBJECTIVELY REASONABLE BASIS FOR SEEKING REMOVAL.

The Court denies Perez' request for costs and fees, because the City of Anthony has an objectively reasonable basis for seeking removal. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. at 141. "It is not necessary that the plaintiff show that the defendants acted in bad faith to win attorney's fees." Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d 1066, 1081-82 (D.N.M. 2011)(Browning, J.). Where a defendant has made good-faith arguments and cited authority to support their removal, the Court has not ordered fees and costs. See, e.g., Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d at 1082 (denying a request for fees and costs where the defendant "made good-faith arguments, with supporting authority, that removal was appropriate"); Allen v. Allstate Ins., No. CIV 08-0733 JB/RHS, 2010 WL 519862, at *6 (D.N.M. Jan. 26, 2010)(Browning, J.)("The Court finds that Allstate has made good-faith arguments and has found some authority to support its position that a second removal was appropriate."). Even though the City of Anthony does not provide on-point authority to support its removal position, the City of Anthony makes novel, good-faith arguments that Perez' free-speech claims under the recently enacted New Mexico Civil Rights Act ought to be in federal court under Grable, and Perez' Complaint invokes a federal standard when describing the retaliation claim. See Hunt v. Jack V. Waters, D.C., P.C., 403 F. Supp. 3d 1036, 1070-71

(D.N.M. 2019)(Browning, J.)(denying fees request where the removing parties "cite no authority that is on point to support their position," but "[n]o court [] has yet addressed their specific ideas" regarding removal); Darr v. N.M. Dep't of Game & Fish, 403 F. Supp. 3d 967, 1015-16 (D.N.M. 2019)(Browning, J.)(denying fees request where the removing party "cites no on-point authority to support its position," but "[n]o new Mexico court has yet addressed" the disputed removal theory and the complaint "contains over a dozen references" to a federal statute).  Accordingly, the Court concludes that the City of Anthony has an objectively reasonable basis for seeking removal, and the Court denies Perez' costs and fees request.

## III.   THE COURT DECLINES TO ADDRESS THE MOTION TO DISMISS AND THE MOTION FOR EXTENSION.

The Court declines to address the Motion to Dismiss and the Motion for Extension, because the Court does not have subject-matter jurisdiction.  After remanding, the Court ought not rule on these motions, which are better left for the State court to resolve.  See Chieftain Royalty Co. v. SM Energy Co., 100 F.4th 1147, 1161 (10th Cir. 2024)(addressing a jurisdictional issue first, because, "[a]bsent an assurance that jurisdiction exists, a court may not proceed in a case"); Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d 1238, 1245 (10th Cir. 2005)(holding that, "because the district court never had jurisdiction over the case, it had no power to rule on any substantive motions or to enter judgment in the case"); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)(concluding that "the district court had no authority" to decide a motion to dismiss, because, "[s]imply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue"); H.R. ex rel. Reuter v. Medtronic, Inc., 996 F. Supp. 2d 671, 675 n.2 (S.D. Ohio 2014)(Black, J.)(resolving a motion to remand before a motion to dismiss, because, "if remand is appropriate, then the state court should decide the motion to dismiss").  The Court has taken this same path.  See Provencio v. Ford Motor Co., 2005 WL

3662957, at *9.  After remanding for lack of subject-matter jurisdiction, the Court concludes that it "should not consider any further matters in this case" and declines to address a request for leave to amend, "because it has no power to continue presiding over this case."  2005 WL 3662957, at *9.  The Court reasons: "Without jurisdiction, the Court is like a car without any gasoline, a machine that can do nothing until this defect is rectified.  So, too, the Court must return this case to where it belongs -- in state court -- and refrain from pronouncing any more on this matter."  2005 WL 3662957, at *9.  Charting the same course and acknowledging its empty jurisdictional tank, the Court declines to address the Motion to Dismiss and the Motion for Extension here.

**IT IS ORDERED** that: (i) the Plaintiff's Opposed Motion to Remand Action to State Court, filed January 6, 2025 (Doc. 10), is granted in part and denied in part; (ii) the case is remanded to the County of Doña Ana, Third Judicial District Court, State of New Mexico; and (iii) the Plaintiff Adrian Perez shall not be awarded attorney's fees and costs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Christopher C. Benoit
Benoit Legal, P.L.L.C.
El Paso, Texas

    *Attorney for the Plaintiffs*

James C. Wilkey
Mark A. Metzgar
Rhys Llewellyn
Dixon Scholl Carillo, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*